UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAN FRASER and ANDREA FRASER,

Plaintiffs,

v. Case No.: 5:26-cv-68-SPC-PRL

TRUIST BANK,

Defendant.

---

**OPINION AND ORDER**

Before the Court is Defendant Truist Bank's Motion to Dismiss Plaintiffs Jan and Andrea Fraser's[1] Amended Complaint. (Doc. 38). Plaintiffs responded in opposition. (Doc. 39). With the Court's permission, Defendant filed a reply (Doc. 42), and Plaintiffs filed a surreply (Doc. 43). For the following reasons, the Court grants the motion in part and denies it in part.

**Background and Procedural History**

Plaintiffs are elderly customers in their eighties with a longstanding banking relationship with Defendant. (Doc. 35 ¶¶ 2, 3, 8). In late 2024, Plaintiffs received several calls notifying them that they had won over $7.5 million, a Mercedes Benz, and $10,000 per week for the rest of their lives from

[1] On July 22, 2026, Plaintiffs filed a Suggestion of Death Upon the Record, explaining that Jan Fraser died on July 8, and Andrea Fraser continues to prosecute the action. (Doc. 44).

the Publishers Clearing House ("PCH"). (*Id.* ¶ 11). A subsequent email advised them that receiving such a prize can generate tax implications with the IRS, but to "ensure that this joyous occasion remains as such," PCH would cover all tax liabilities. (*Id.* ¶ 12). It would send the funds via FedEx to cover the tax obligations. To receive their winnings, Plaintiffs needed to open a new bank account with Defendant for the deposit to pay the taxes. (*Id.* ¶ 13). Plaintiffs were instructed that once PCH deposited the money into the new account, Plaintiffs should withdraw that money in the form of a cashier's check to FedEx to the IRS to pay the taxes. (*Id.* ¶ 14).

At the time, Plaintiffs already jointly held two accounts with Defendant. (*Id.* ¶ 15). In December 2024, Plaintiffs opened a new checking account solely to receive the tax payment funds from PCH. (*Id.* ¶ 16). Defendant's employees assisted them in opening the new account but did not ask why they opened it. (*Id.* ¶¶ 17–18).

Plaintiffs did not transfer or authorize anyone to transfer any money from their original accounts to the new account. Nevertheless, without Plaintiffs' knowledge or authorization, in December 2024, unknown individuals transferred $97,450.23, $95,422.33, and $15,000 from one of Plaintiffs' original accounts to the new account. (*Id.* ¶ 19). The individuals used online banking channels described in bank records as "eTransfer Debit, Online Xfer" transactions. (*Id.* ¶ 25).

Plaintiffs believed that PCH had deposited the money into the new account to pay the taxes, so they requested cashier's checks from Defendant in person and forwarded them by FedEx to an individual they believed worked for the IRS. (*Id.* ¶¶ 21, 29–31). However, the individuals behind the PCH fraud were allegedly responsible for the transfers from Plaintiffs' original account to their new account. (*Id.* ¶ 28).

According to Plaintiffs, this "pattern of activity occurred in a short period of time, is highly suspicious, and indicative of fraud, which financial institutions such as Truist are aware of, or should be aware of." (*Id.* ¶ 32). Plaintiffs allege Defendant failed to take a variety of actions, including investigate or take steps to protect them; sufficiently question Plaintiffs when they withdrew the money from the new account to send to the fraudsters via cashier's check; place a hold on the transaction; place limitations on the new account; investigate the suspicious activity; intervene to prevent the unauthorized transfers; implement adequate security measures; properly train its employees; or monitor the accounts for fraud. (*Id.* ¶ 33). Defendant's records allegedly contain evidence of how the fraudulent transfers occurred, and its internal procedures should have prevented the transfers. (*Id.* ¶ 34). As a result of these events, Plaintiffs lost $182,700.10. (*Id.* ¶ 36).

In December 2025, Plaintiffs sued Defendant in the Circuit Court for the Fifth Judicial District in and for Lake County. In January 2026, Defendant removed the case under this Court's diversity jurisdiction. (Doc. 1).

In May, the Court granted Defendant's motion to dismiss. (Doc. 29). In relevant part, the Court found that Article 4A of the Uniform Commercial Code ("UCC"), as adopted in Chapter 673–74, Florida Statutes, preempted Plaintiffs' negligence claim. Additionally, the Court concluded that Plaintiffs' UCC claim failed to satisfy Federal Rule of Civil Procedure 8.

In their Amended Complaint, Plaintiffs bring two claims: (1) negligence (count 1); and (2) claim pursuant to Chapter 670, Fla. Stat. (count 2). The Court dismissed both claims without prejudice in its Order, so this is Plaintiff's second bite at the apple. Again, Defendant moves to dismiss both claims.

## Analysis

### *Negligence (count 1)*

First, Plaintiffs' negligence claim. Defendant raises two arguments. First, it argues that UCC Article 4 and/or Article 3 preempt the claim. Additionally, it argues that Plaintiffs have failed to show that Defendant owes them a duty. The Court takes these arguments in turn.

Like its first motion to dismiss, Defendant again argues that Article 4 preempts the negligence claim. (Doc. 38 at 3). Plaintiffs disagree. To them, the crux of the negligence claim is that "Defendant failed to exercise reasonable

care during direct interactions with elderly customers who exhibited circumstances indicative of an ongoing fraud." (Doc. 39 at 5). In other words, their negligence allegations concern Defendant's conduct that occurred "outside the passive mechanics of processing payment orders." (*Id.* at 7).

With this distinction in mind, Defendant pivots. In its reply, it argues that even if the Court accepts Plaintiffs' version, Article 3—which provides the framework governing the duties, obligations, and remedies arising from the issuance, processing, and payment of cashier's checks—nevertheless preempts the negligence claim. (Doc. 42 at 3).

First, Article 4 preemption. Plaintiffs' poor pleading makes it difficult to discern the heart of their negligence claim. In paragraph 39, the first paragraph of the negligence claim, they reallege the allegations in paragraphs 1 through 38—the entirety of their factual background. So the Court must carefully examine the remaining allegations in count 1 to understand the basis of the claim. Despite Plaintiffs' attempt to couch the claim as rooted in Defendant's employees' actions when Plaintiffs obtained cashier's checks, their allegations belie their efforts. Breaking down the allegations in count 1 shows they primarily concern the allegedly fraudulent transfer of funds from Plaintiff's original account to the new account they opened to receive tax money from PCH:

> 42. Defendant did not contact Plaintiffs to verify the *legitimacy of the transfers into the new Accounts* before processing them.
>
> 47. Defendant did *not prevent the transfers of the funds* from taking place even though the New Account had been recently opened without a known purpose.
>
> 48. Defendant did *not prevent or delay the transfers* even though they were part of a pattern of activity that was highly suspicious and indicative of fraud.
>
> 49. Defendant breached its duty by *failing to implement adequate security measures to prevent unauthorized access to Plaintiffs' accounts*.
>
> 50. Unknown individuals were able to access Plaintiffs' accounts and *initiate transfers through online banking channels without proper verification or authentication*.
>
> 55. The *unauthorized transfers* directly resulted from Defendant's failure to exercise reasonable care.
>
> 57. Plaintiffs lost $182,700.10 as a direct result of the *unauthorized transfers* and withdrawals.

(Doc. 35 ¶¶ 42, 47–50, 55, 57 (emphasis added)). To the extent the negligence claim relies on the unauthorized transfers, Article 4 preempts it. *See Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*, 795 F. App'x 741, 750 (11th Cir. 2019) (finding no error in decision Article 4A preempted negligence claim because complaint alleged no negligence beyond the scope of the erroneous funds transfer).

However, the preemption inquiry cannot end there. Paragraphs 46, 54, 57 of count 1 also mention Defendant's actions in connection with Plaintiffs' cashier's checks:

> 46. *Defendant did not adequately question the Plaintiffs about the withdrawal of the large sums of monies, via cashier's checks* from the New Account, when the Plaintiffs appeared at the bank on two (2) occasions – on December 9, 2024, and on December 10, 2024.
>
> 54. The fraud perpetrated on the Plaintiffs would not have occurred had the Defendant intervened to prevent the transfers, alerted Plaintiffs to the unusual activity, implemented adequate security measures, *properly monitored or questioned the Plaintiffs about* the accounts and the opening of the new account, and *the removal of the funds via cashier's checks*.
>
> 57. Plaintiffs lost $182,700.10 as a direct result of the unauthorized transfers *and withdrawals*.

(Doc. 35 ¶¶ 46, 54, 57 (emphasis added)). *This* conduct falls outside the scope of the transfers listed above. Thus, to the extent Plaintiffs allege negligence based on Defendant's "face-to-face interactions with Plaintiffs" during the cashier's check transactions (Doc. 39 at 4) and "conduct occurring outside the passive mechanics of processing payment orders" (*id.* at 7), Article 4 does not preempt the claim.

But what about Article 3? Faced with Plaintiffs' argument that the gravamen of their negligence claim is their cashier's check transactions, Defendant argues in its reply that Article 3 preempts the claim. (Doc. 42 at 3). Defendant correctly states that a cashier's check is a negotiable instrument under Article 3. (*Id.* (citing Fla. Stat § 673.1041)). And Plaintiffs concede that "the cashier's checks issued after the electronic funds transfers are governed

by Articles 3 and 4 rather than Article 4A. Plaintiffs do not contend otherwise." (Doc. 39 at 10).

But then Defendant's arguments fall apart. It argues that the UCC "provides the exclusive framework governing the duties, obligations, and remedies arising from the issuance, processing, and payment of the cashier's checks at issue." (Doc. 42 at 3 (citing Fla. Stat. §§ 673.1011.6051)). This may be true. But the Court cannot locate Fla. Stat. §§ 673.1011.6051. Perhaps it is a typographical error? Defendant cites no cases in support of its argument. Nor does Defendant provide a quotation from Article 3 that the Court might locate. "A party's failure to cite legal authority in support of its position suggests either that there is no authority to sustain its position or that it expects the court to do its research." *Alonso Cano v. 245 C & C, LLC*, No. 19-21826-CIV, 2019 WL 11769102, at *10 (S.D. Fla. Nov. 25, 2019) (cleaned up). So, "the Court declines the invitation to do [Defendant's] research and rejects [its] arguments for failure to cite supporting authority." *Id.* (cleaned up). Ultimately, it is not clear to the Court based on Defendant's deficient briefing that Article 3 preempts the alleged negligent conduct stemming from the cashier's check transactions. Accordingly, the motion is denied to the extent Defendant argues Article 3 preempts the negligence claim.

That does not end the inquiry. To state a negligence claim under Florida law, Plaintiffs must plead four elements: (1) a duty requiring Defendant to

conform to a certain standard of conduct; (2) a breach of that duty by Defendant; (3) a causal connection between the breach and an injury to Plaintiffs; and (4) loss or damage to Plaintiffs. *See Clay Elec. Co–op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

At issue now is the first element, Defendant's alleged duty to Plaintiffs. "It is well established that questions regarding duty of care and foreseeability as it relates to a duty of care are questions of law." *Recreational Design & Const., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*, 820 F. Supp. 2d 1293, 1298 (S.D. Fla. 2011) (citing *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009) (noting that whether there is a duty of care "poses a question of law that the court must answer before permitting a negligence claim to proceed before the trier of fact")). "Florida law recognizes four sources of duties of care: statutes and regulations, judicial interpretations of legislation, judicial decisions, and duties arising from the facts of a particular case." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1321 (M.D. Fla. 2015), a*ff'd sub nom. Wiand v. Wells Fargo Bank, N.A., Inc.*, 677 F. App'x 573 (11th Cir. 2017) (citing *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227–28 (Fla. 2010)).

In Florida, "a bank does not have a fiduciary relationship with its standard deposit account customers but instead owes only a duty of ordinary care in arms-length transactions." *Ponorovsky v. JPMorgan Chase Bank, N.A.*, No. 25-CV-62640, 2026 WL 1998626, at *3 (S.D. Fla. July 2, 2026) (citing *First*

*Nat. Bank & Tr. Co. of Treasurer Coast v. Pack*, 789 So. 2d 411, 414 (Fla. Dist. Ct. App. 2001); *Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. Dist. Ct. App. 2001)). "This ordinary duty does not require [a bank] to act for the benefit or protection of [account holders]." *Id.* (citing *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.,* 605 F. App'x 820, 823 (11th Cir. 2015)).

"However, Florida courts permit proof of a statutory violation to serve as prima facie evidence of negligence because the standard of conduct or care embraced within such a legislative measure . . . represents a standard of at least reasonable care which should be adhered to in the performance of any given activity." *Id.* (cleaned up) (citing *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. Dist. Ct. App. 2014). "Although proof of a statutory violation will not overhaul the negligence cause of action by converting it into a case sounding in negligence per se, Florida courts do allow the showing of a statutory violation to establish the existence of a duty and a breach thereof." *Id.* (quoting *Ginder v. Bank of Am. Corp.*, No. 6:14-CV-1271-ORL-40, 2015 WL 898595, at *2 (M.D. Fla. Mar. 3, 2015) (internal quotation marks omitted)).

To "support the applicable standard of care" (Doc. 39 at 6), Plaintiffs rely on Florida's Adult Protective Services Act ("FAPSA"), specifically § 415.1034(3).[2] (Doc. 35 ¶ 33(iii) (alleging Defendant failed to "place a hold on

[2] Defendant points out that the section of the statute cited in the Amended Complaint does not exist. (Doc. 42 at 2 n.1). Plaintiffs concede this citation contains a scrivener's error. (Doc.

the transaction and report the suspicious nature of the transactions in accordance with § 415.1034(3), Florida Statutes")). FAPSA mandates that banks report when one "knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited . . . immediately report such knowledge or suspicion to the central abuse hotline." *Arberman v. PNC Bank, Nat'l Ass'n*, No. 23-10182, 2023 WL 3910573, at *3 (11th Cir. June 9, 2023) (quoting Fla. Stat. § 415.1034(1)(a)). FAPSA defines "vulnerable adult" as "a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, longterm physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(28).

FAPSA contains other relevant terms. In a recent case analyzing the statute, the Eleventh Circuit explains various important definitions, including:

> (8) (a) "Exploitation" means a person who:
>
> 1. Stands in a position of trust and confidence with a vulnerable adult and knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult of the use, benefit, or possession of the funds, assets,

---

43 at 2 n.2). They explain they refer to "the authority to place a hold on a transaction and report suspected financial exploitation under section 415.1034(2), Florida Statutes[.]" (*Id.*). The Court independently reviewed this section of FAPSA. It does not say what Plaintiffs say it does. Rather, subsection 2 covers "Mandatory reports of death." The Court is perplexed by Plaintiffs' carelessness in citing the statute they argue informs the duty on which their negligence claim depends.

or property for the benefit of someone other than the vulnerable adult; or

2. Knows or should know that the vulnerable adult lacks the capacity to consent, and obtains or uses, or endeavors to obtain or use, the vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult.

(b) "Exploitation" may include, but is not limited to:

1. Breaches of fiduciary relationships, such as the misuse of a power of attorney or the abuse of guardianship duties, resulting in the unauthorized appropriation, sale, or transfer of property;

2. Unauthorized taking of personal assets;

3. Misappropriation, misuse, or transfer of moneys belonging to a vulnerable adult from a personal or joint account; or

4. Intentional or negligent failure to effectively use a vulnerable adult's income and assets for the necessities required for that person's support and maintenance.

Fla. Stat. § 415.102(8).

FAPSA also defines "position of trust and confidence" with respect to a vulnerable adult as the position of a person who:

(a) Is a parent, spouse, adult child, or other relative by blood or marriage;

(b) Is a joint tenant or tenant in common;

(c) Has a legal or fiduciary relationship, including, but not limited to, a court-appointed or voluntary guardian, trustee, attorney, or conservator; or

> (d) Is a caregiver or any other person who has been entrusted with or has assumed responsibility for the use or management of the vulnerable adult's funds, assets, or property.
>
> *Id.* § 415.102(19). "Capacity to consent" is defined as when "a vulnerable adult has sufficient understanding to make and communicate responsible decisions regarding the vulnerable adult's person or property, including whether or not to accept protective services offered by the department." *Id.* § 415.102(4).

*Arberman*, 2023 WL 3910573, at *4.

"[A]lthough FAPSA does not create a private cause of action,[[3]] a statutory violation of FAPSA can be a factual predicate of a viable common law negligence claim under Florida law." *Goodwin as trustee of Dorothy M. Goodwin Tr. v. JP Morgan Chase Bank, N.A.*, No. 2:23-CV-00438-WJM, 2024 WL 1673363, at *6 (D.N.J. Apr. 18, 2024), *appeal dismissed sub nom. Goodwin v. JP Morgan Chase Bank NA*, No. 24-1852, 2024 WL 4751205 (3d Cir. Sept. 12, 2024) (citing *Regan v. Bank of Am., N.A.*, No. 23-80700-CIV-CAN, 2023 U.S. Dist. LEXIS 173505, at *17 (S.D. Fla. Sept. 27, 2023)).

Here, Plaintiffs have failed to sufficiently allege that Defendant owed them a duty of care and had a reasonable suspicion to suspect that they were being exploited. Certain allegations can give rise to a bank owing a duty to an elderly adult. *See Ponorovsky v. JPMorgan Chase Bank, N.A.*, No. 25-CV-

---

[3] Plaintiffs do not rely on the statute to assert an independent cause of action, nor do they contend that it creates a private right of action. (Doc. 39 at 6).

62640, 2026 WL 1998626, at *4 (S.D. Fla. July 2, 2026) (finding bank owed 80-year old plaintiff a duty under FAPSA where plaintiff alleged the bank was aware she was a "vulnerable adult;" the bank aware of the precise elder exploitation scam by which she was victimized; the bank maintained policies and procedures to detect and prevent elder fraud scams; each transaction was suspicious on its face; the bank's internal system flagged each transaction at issue as "suspicious," among many other detailed allegations); *Ginder v. Bank of Am. Corp.*, No. 6:14-CV-1271-ORL-40, 2015 WL 898595, at *3 (M.D. Fla. Mar. 3, 2015) (finding bank owed elderly plaintiff a duty where the plaintiff described at least 20 instances of fraudulent activity involving at least four accounts, alleged that the bank failed to investigate even after the plaintiff's daughter advised it that plaintiff was being exploited, alleged that the bank opened multiple Suspicious Activity Reports and investigated but took no action to notify her or stop the fraudulent activity).

However, as pled, Plaintiffs have not shown that Defendant owed them a duty in connection with the cashier's check transactions. They did not allege they were "vulnerable adults," nor did they allege any facts which might lead Defendant to believe they were. For instance, they do not allege any impairment of their performance of daily activities. Further, they do not allege they need assistance for daily living. They do not allege cognitive or physical decline.

Other deficiencies exist. Plaintiffs have not alleged that Defendant's employees who helped with the cashier's checks transactions were aware of their age.[4] They also do not allege that the employees were aware of the allegedly unauthorized transfers at the time they issued the cashier's checks, such that their suspicions should have been raised.

Following *Arberman*'s guidance, the Court also finds that Plaintiffs did not sufficiently allege "exploitation" under FAPSA. Plaintiffs do not allege the fraudsters, who Plaintiffs believed were affiliated with PCH, held a "position of trust and confidence" with them. A person affiliated with PCH "does not have the kind of legal and fiduciary relationship with [Plaintiffs] similar to that of a caregiver, court-appointed guardian, or attorney." *See Arberman*, 2023 WL 3910573, at *5 (citing § 415.102(19)).

Though the Court cautioned Plaintiffs to support their case with relevant authority in its first Order (Doc. 29 at 7 ("If this case proceeds, *Plaintiffs are on notice that they must cite authority in their briefs to support their arguments*.") (emphasis in original)), Plaintiffs only cite *Ginder* for support. Notably, *Ginder* and other cases the Court located which found that FAPSA created a duty for a bank under circumstances of elder fraud both involved

[4] The cashier's checks transactions were in-person, so it is a plausible inference that they were aware that Plaintiffs were elderly. But simply being elderly does not necessarily mean Plaintiffs are vulnerable adults under the statute.

allegations that the banks systems independently flagged the transactions as suspicious. *See Ponorovsky*, 2026 WL 1998626, at *4 (Chase's internal systems flagged each transaction at issue as suspicious before, during, and after it processed each transaction); *Ginder*, 2015 WL 898595, at *1 (alleging bank opened multiple internal Suspicious Activity Reports related to plaintiff's accounts but failed to notify her and failed to stop the suspicious activities). The Amended Complaint contains no similar allegations.

Reading the Amended Complaint as a whole, the Court finds that Plaintiffs' advanced age alone is insufficient to render them vulnerable within the meaning of the statute. This case is similar to *Arberman*, where the Eleventh Circuit found that the district court did not err in concluding that the plaintiff failed to "sufficiently allege that [the bank] owed her a duty of care to monitor her own transactions." *Arberman*, 2023 WL 3910573, at *5. Here, too, Plaintiffs initiated the cashier's check transactions. The Court concludes that Plaintiffs have failed to plausibly allege they were the victims of exploitation under FAPSA and that Defendant owed a baseline duty of care. As such, their negligence claim fails.

The question of whether to dismiss the negligence claim with prejudice is difficult. The Court is not inclined to give Plaintiffs yet another chance to plead their shaky negligence claim. However, the Court previously dismissed Plaintiffs' first negligence claim because it was preempted by the UCC. *Fraser*

*v. Truist Bank*, No. 5:26-CV-68-SPC-PRL, ---F. Supp. 3d.---, 2026 WL 1361617, at *2 (M.D. Fla. May 15, 2026). They were not on notice of the deficiencies identified in *this* order. *See Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 755 (11th Cir. 2021) ("Because the district court erred in using the *McDonnell Douglas* evidentiary standard to evaluate Powers's claims at the pleading stage and abused its discretion by dismissing the action without first providing notice of the complaint's deficiencies and an opportunity to amend, we vacate the dismissal and remand for further proceedings consistent with this opinion."). Nevertheless, the Court is not Plaintiffs' advocate. It will provide them with one final opportunity to properly plead a negligence claim in this case. Any further deficiency will result in dismissal with prejudice.

*Violation of §§ 670.201–203, Fla. Stat. (count 2)*

Next, Plaintiffs' claim under Article 4A of the UCC. The Eleventh Circuit has observed that the relevant UCC provisions and case law applying them are "oftentimes confusing." *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012) (explaining Fla. Stat. §§ 670.201 & 670.202). The Circuit is, without doubt, correct.

With respect to count 2, Defendant argues that Plaintiffs' allegation that it failed to follow security protocols and/or industry standards does not satisfy Rule 8. (Doc. 42 at 4). But Plaintiffs' claim is not as conclusory as Defendant describes. Boiled down, Plaintiffs have alleged that Defendant "accepted and

processed unauthorized electronic funds transfers, failed to verify the identify of the person initiating those transfers, failed to follow applicable security procedures and industry standards, failed to exercise ordinary care, and thereby caused Plaintiffs' losses." (Doc. 39 at 10; Doc. 43 at 4–5).

Plaintiffs' reliance on *Rodriguez v. Branch Banking & Tr. Co.*, 46 F.4th 1247, 1258 (11th Cir. 2022), and *Dickson v. Wells Fargo Bank, N.A.*, 812 F. Supp. 3d 1281 (S.D. Fla. 2025), is instructive. In *Rodriguez*, the Eleventh Circuit explained that whether a bank's security procedure is

> "commercially reasonable" is "a question of law" to be determined by considering all the following: (1) the circumstances of the customer known to the bank (including the size, type, and frequency of payment orders); (2) alternate security procedures offered to the customer; and (3) security procedures in general use by customers and receiving banks similarly situated.

46 F.4th at 1258 (citation omitted). Relying on *Rodriguez*, a judge in the Southern District of Florida denied a motion to dismiss a similar statutory claim, reasoning that it would be prudent to make this determination based on the complete record. *See Dickson*, 812 F. Supp. 3d at 1291. Of course, *Rodriguez* is binding. And the undersigned finds *Dickson* persuasive. Given that Plaintiffs' statutory claim squeaks past Rule 8, the Court concludes it would be prudent to resolve count 2 on a complete record. Accordingly, the motion to dismiss count 2 is denied.

Accordingly, it is now

**ORDERED:**

Defendant Truist Bank's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 38) is **GRANTED in part and DENIED in part**.

Plaintiffs may file one final amended complaint by **October 12, 2026**. *Failure to comply with this Order may result in dismissal without further notice.*

**DONE** and **ORDERED** in Fort Myers, Florida on September 28, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record